F:\WP51\DOCS\KHENRY\6989.0015\00100040.DOC

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES HANSON | ) | |
| | ) | |
| | ) | Case No. 15-CV-08171 |
| Appellant | ) | |
| | ) | |
| v. | ) | |
| BRENDA HELMS - TRUSTEE | ) | |
| | ) | |
| Appellee | ) | |

## NOTICE OF MOTION

TO:  David L. Kane
Meltzer, Purtill & Stelle LLC
300 South Wacker Drive, Suite 3500
Chicago, Illinois 60606
(312) 987-9900
Fax: (312) 987-9854

On November 24, 2015 at 9:15 A.M. or as soon thereafter as counsel may be heard, I shall appear before the Honorable Judge Dow, in the courtroom 1914 in the Dirksen Federal Building, 219 S. Dearborn, Chicago, Illinois, and present the attached Motion of Charles Hanson to Amend Briefing Schedule.

Peter G. Swan
EMALFARB, SWAN & BAIN
440 Central Avenue
Highland Park, IL 60035
(847) 432-6900
# 6186883

## CERTIFICATE OF SERVICE

I, Peter Swan, certify I served this notice by mailing copies to the above attorneys of record at the addresses above and depositing the same in the U.S. Mail at the Central Ave. Post Office, by 5:45 P.M. on November 17, 2015.

/s/ Peter G. Swan

F:\WP51\DOCS\KHENRY\6989.0015\00100039.DOC

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES HANSON | ) | |
| | ) | |
| | ) | Adversary No. 15-00034 |
| Appellant | ) | |
| v. | ) | |
| BRENDA HELMS - TRUSTEE | ) | |
| | ) | |
| Appellee | ) | |

## MOTION TO AMEND BRIEFING SCHEDULE

Now comes the Adversary Defendant and Appellant, Charles Hanson, by and through his undersigned counsel, and hereby respectfully moves this Court to amend the briefing schedule order entered on November 13, 2015 and in support thereof states as follows:

1.     Charles Hanson filed his notice of appeal in this matter on September 16, 2015. The clerk transmitted the record on appeal on October 21, 2015, and the Clerk issued a notice that the clerk was supplementing the record on appeal effective November 16, 2015 with the Plaintiff's exhibits which had inadvertently been omitted from the record on appeal although the documents had been identified in the Appellant's designation of documents to be included in the record on appeal.

2.     Pursuant to Bankruptcy Rule 8018, Charles Hanson docketed the filing of his Appellant's Brief for 30 days from October 21, 2015, and on November 17, 2015 filed his Appellant's Brief and Appendix. A copy of Appellant's Brief is attached hereto as Exhibit "A".

1

uncontested facts of the case. As the entire trial was completed in less than one full day with only two witnesses testifying and limited exhibits being admitted by the parties, the record in this case is not extensive.

4.     The present briefing schedule as ordered by this Court has Charles Hanson filing his Appellant's Brief on January 8, 2016, Appellee's Brief by February 26, 2016 and Reply Brief by March 18, 2016. Based upon the fact Charles Hanson has already filed his brief, and the limited record and issues before the Court, Charles Hanson is requesting that this Court amend the briefing schedule so that this appeal can be concluded more rapidly.

WHEREFORE, Charles Hanson respectfully requests that this Court amend the briefing schedule regarding this appeal.

<div style="margin-left: 40%;">
Respectfully Submitted<br>
Charles Hanson

By: s/Peter Swan_____<br>
    EMALFARB, SWAN & BAIN<br>
    His Attorneys
</div>

Peter G. Swan
EMALFARB, SWAN & BAIN
440 Central Avenue
Highland Park, Illinois 60035
(847) 432-6900
Attorney # 6186883

# EXHIBIT "A"

No. 15 CV 8171

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Mollie Enterprises, Inc. | ) | |
| | ) | |
| Debtor | ) | Honorable Robert M. Dow, Jr. |
| | ) | |
| | ) | |
| Brenda Helms, as Trustee | ) | Bankruptcy Case |
| | ) | Adversary No. 15-00034 |
| Plaintiff/Appellee | ) | |
| v. | ) | |
| Charles Hanson | ) | |
| | ) | |
| Defendant/Appellant | ) | |

## ON APPEAL FROM
## THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION
## HON. EUGENE R. WEDOFF- JUDGE PRESIDING

## ADVERSARY DEFENDANT-APPELLANT CHARLES HANSON'S
## BRIEF ON APPEAL

Peter G. Swan
Attorney for Appellant Charles Hanson
EMALFARB, SWAN & BAIN
440 Central Avenue
Highland Park, Illinois 60035
(847) 432-6900
peter@esb-law.com
Attorney # 6186883

# TABLE OF CONTENTS

## APPELLANT CHARLES HANSON'S BRIEF ON APPEAL

Table of Authorities ……………………………………….. i

Jurisdictional Statement …………………………………… 1

Statement of Issues Presented for Review …………………… 1

Standard of Review …………………………………….... 1

Statement of the Case and Statement of Facts ………………….. 2

Summary of Appellant's Arguments ………………………… 8

Argument ……………………………………………….. 9

    I.     Adverse Domination Rule …………………….. 9

    II.    Elements Necessary to Invoke the Adverse Domination Rule …………………………………. 12

    III.   Adverse Domination Rule has Never Been Applied To a Sole Shareholder Who is the President of the Corporation ……………………………………. 14

    IV.   Hanson did not Commit "Wrongdoing"……………… 16

    V.    Analysis of the Bankruptcy Court's Ruling ………….. 17

    VI.   No Concealment from other Officers, Shareholders Or Directors ……………………………………. 23

Conclusion ……………………………………………….. 25

Certificate of Compliance ………………………………… 27

Certificate of Service ……………………………………… 28

## TABLE OF AUTHORITIES

**Federal Cases**

In re: Doctors Hosp. of Hyde Park, Inc., 474 F.3d 421, 428 (7th Cir. 2007)............. 21

In re Emerald Casino, Inc., 530 B.R. 44, 172-73 (N.D. Ill. 2014)......................... 11

FDIC v. Benson, 867 F. Supp. 512, SD Texas 1994........................................ 15

In re Fairgrieves, 426 B.R. 748, 755-56 (Bankr. N.D. Ill. 2010)........................... 22

In re Holler, 187 B.R. 622, 639 (Bankr. C.D. Ill. 1994)....................................21

Lease Resolution Corp. v. Larney, 308 Ill. App. 3d 80, 719 N.E.2d 165 (1999)...10 &  12

Resolution Trust Corp. v. Chapman, 895 F. Supp. 1072, 1079 (C.D. Ill. 1995)........... 23

Resolution Trust Corp. v. Franz, 909 F. Supp. 1128, 1137 (N.D. Ill. 1995).............. 24

**Illinois Cases & Statutes**

Robert P. Butts & Co. v. Butts' Estate, 119 Ill. App. 2d 242, 255 N.E.2d 622
(Ill. App. Ct. 1970).................................................................... 13

735 ILCS 5/13-205...................................................................... 5

## JURISDICTIONAL STATEMENT

This appeal arises from an order of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division which entered a final judgment in an adversary proceeding in favor of the Plaintiff Trustee and against the Defendant Charles Hanson. The final order of the Bankruptcy court is dated September 9, 2015. The Bankruptcy Court had jurisdiction to enter the final order pursuant to 28 U.S.C. §§157(a) and 157(b)(1). This District Court has jurisdiction over this appeal pursuant to 28 U.S.C. §158. Appellant's notice of appeal was filed on September 16, 2015.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Did the Bankruptcy Court err when it applied the adverse domination rule to extend the statute of limitations as to a time barred claim for breach of an oral, due on demand, loan agreement between the borrower, Charles Hanson, who was the President and sole shareholder of Northwest Building Materials & Supply Company (NWBM), and the lender, NWBM.

## STANDARD OF REVIEW

The District Court reviews the bankruptcy court's conclusions of law, and mixed questions of law and fact, *de novo. Stamat v. Neary,* 635 F.3d 974, 979 (7th Cir.2011); *see also In re Ebbler Furniture and Appliances, Inc.,* 804 F.2d 87, 89 (7th Cir.1986) ("The factual determinations are subject to the clearly erroneous standard; but the manner in which these factual conclusions implicate the legal definition of value is subject to a de novo review."). As the facts in this case are not in dispute, but rather the bankruptcy court's application of the adverse domination rule to the facts, this case is subject to de novo review.

## STATEMENT OF THE CASE AND STATEMENT OF FACTS

The transcript of the trial proceedings of June 29, 2015 is attached as Appellant's Appendix Exhibit 5 and references to the transcript are identified as "T" followed by the transcript page number. A concise summary of the facts relating to the Trustee's claim against Charles Hanson can be found in the Trustee's affidavit of proof, Docket #6 in case 15-CV-0871 Ex. #10 page 34. References to the Trustee's affidavit are identified as "Aff" followed by the page number of the affidavit. Since the early 1980's, Charles Hanson was the President and sole shareholder of NWBM, an Illinois corporation, that sold building materials from various locations through other related corporations which were controlled by NWBM. (T-12-17) NWBM is now known as Mollie Enterprises Inc., but will be referred to in this brief as NWBM. The other officers of NWBM were Charles Hanson's daughter, Katherine Henry, and his two sons, Scott Hanson and Charles Hanson Jr. (T-31) NWBM was a subchapter S corporation, which meant that all profit of the corporation was taxed annually to its sole shareholder, Charles Hanson, and he paid taxes on all profits at his personal tax rate. (T-23 & T-5) Charles Hanson ran the day to day affairs of NWBM until 2008 when Kathy Henry took over NWBM due to Charles Hanson's advanced age and because he suffered from Parkinson's disease and dementia. (T-70 and T-77) Kathy Henry was in charge of the finances of NWBM from the early 1990's through the end of 2010. (T-70) At some time prior to the end of the fiscal year of 2001, profits from the operation of NWBM were distributed to Charles Hanson. (T-55) The distributions of profits, for which Charles Hanson had paid taxes, was entered on the books and records of NWBM as a loan to Charles Hanson, which accrued interest

2

charges on an annual basis. (T-25-26) At the end of each fiscal year, NWBM's accountants, Miller Cooper & Co., Ltd., prepared a "Consolidated Financial Statements and Independent Accountants' Report" which was distributed to Charles Hanson, the other corporate officers and to NWBM's secured lender, Suburban Bank. (T-18 & T-40) Contained in each of the Consolidated Financial Statements under "Note C- Due From Stockholder" was the following entry which amount due sums changed each year based upon the accruing interest:

"The Companies have uncollateralized advances to one of the stockholders of $2,443,430 and $2,127,556 as of December 31, 2003 and 2002, respectively. Effective January 1, 2002, the advances bear interest at the prime rate (4.00% at December 31, 2003) minus 0.5%. The note was non-interest bearing prior to 2002. Principal and interest are due on demand. The Companies are not expected to demand repayment within the next year; therefore, the balance has been classified as long-term on the accompanying balance sheet." (Copies of all Consolidated Financial Statement admitted into evidence are attached to the Appellant's Appendix as Exhibits 11 through 16).

From the above entry contained in the 2002-2003 Consolidated Financial Statement it is evident that the inception of the loan pre-dates 2002, when the note became interest bearing. Further, according to Peter Cieslak, the accountant from Miller Cooper & Co., who was responsible for overseeing the preparation of the Financial Statements, the inception of the loan could have dated back into the 1990's. (T-63) As also noted in the testimony of the parties at trial, including Mr. Cieslak, there was never a written promissory note or loan agreement prepared to document the verbal, due on demand, loan to Charles Hanson from NWBM. (T-62 & T-71)

The Consolidated Financial Statements that were admitted into evidence as Plaintiff's Exhibits at trial covered the years 2002-2008. Not only did all of the Consolidated Financial Statements contain the same verbiage relating to the verbal loan agreement and the fact that the Company did not intend to demand repayment of the loan, but the Financial Statements further disclosed that NWBM had received loans from the company officers, Kathy Henry, Scott Hanson and Charles Hanson Jr. (T-31) Specifically, the 2002-2003 Consolidated Financial Statement contained "Note E – Notes Payable Officers" which stated:

"Unsecured notes payable to officers are due on demand and bear interest at the prime rate (4.00% at December 31, 2003). The balance was $1,649,804 and $1,484,908 as of December 31, 2003 and 2002 respectively. The officers are not expected to demand repayment during the next year; therefore, the notes have been classified as long-term on the accompanying balance sheet."

NWBM never made demand upon Charles Hanson for repayment of the loan from the loan's inception through the end of 2010 when NWBM ceased conducting business, and Charles Hanson never made any payments under the oral loan agreement with NWBM. (T-53 & T-74).

By the end of 2010 NWBM ceased doing business and its assets were sold to pay the secured debt due Suburban Bank. (T-13 & T-79-80) On May 18, 2012 an involuntary bankruptcy petition was filed by Lafarge North America Inc., New NGC, Inc., and Laborers Pension Fund as case #12 B 20426. On December 17, 2014, the Bankruptcy Trustee, Brenda Helms, sent a letter to Charles Hanson demanding repayment under the oral loan agreement with NWBM. (Aff –7) On January 16, 2015, the Trustee filed an

4

adversary petition under case # 15-A-00034 (Appendix Exhibit 3) on behalf of NWBM against Charles Hanson seeking to recover the funds loaned to Charles Hanson and accrued interest thereon under the theories of Count I –Breach of Contract, Count II – Promissory Estoppel, Count III- Unjust Enrichment, Count IV – Account Stated, Count V – Conversion, Count VI – Breach of Fiduciary Duty, and Count VII – Turnover.

The adversary complaint proceeded to trial on June 29, 2015. During the one day trial Kathy Henry and Peter Cieslak were called to testify. The transcript of the trial proceedings and testimony is attached to the Appendix as Exhibit 5. Charles Hanson did not testify due to his advanced age and the fact that he suffers from dementia and Parkinson's disease. (T-77) The transcript of the trial proceedings is also found in case 15-CV-8171, Docket entry 6, Exhibit #16 pages 3-116. At trial the Bankruptcy Court admitted the Consolidated Financial Statements of NWBM from 2002 through 2008 and the personal financial statements of Charles Hanson that were given to Suburban Bank which evidence the existence of the verbal, due on demand, loan agreement and loan amounts due from Charles Hanson to NWBM. As Charles Hanson had raised the affirmative defense that the causes of action were all time barred by the Illinois five year statute of limitations, the Bankruptcy court had to determine what cause of action was relevant to the transaction and when the cause of action accrued in order to determine if the claim was time barred. Charles Hanson' answer is attached to the Appellant's Appendix as Exhibit 4. Counsel for Charles Hanson argued that since the verbal, due on demand, loan agreement originated prior to the beginning of 2002, any claim to collect on the verbal loan agreement would be time barred by the end of 2005. (see the applicable statute of limitations 735 ILCS 5/13-205). Counsel for the Trustee argued that the cause

of action did not accrue until a demand for payment of the verbal, due on demand, loan was made upon Charles Hanson. Since the only demand for payment made upon Charles Hanson was the Trustee's demand issued on December 17, 2014, the Trustee asserted that the claim against Hanson for the breach of the oral loan agreement was not time barred.

On June 29, 2015, Bankruptcy court judge Eugene Wedoff entered a judgment in favor of the Trustee and against Charles Hanson. (Docket #45 and Appendix Exhibit 6) A copy of the transcript memorializing the judgment order and the findings of the Bankruptcy Court is attached as Appendix Exhibit 5 and the order is Appendix Exhibit 6. In the June 29, 2015 ruling the Bankruptcy court found that there was an oral, due on demand, loan agreement between Charles Hanson and NWBM. Further the Bankruptcy court found that Charles Hanson did not pay the loan balance due upon demand by the Trustee, and thereby breached the verbal contract. Finally, the Bankruptcy court found that the cause of action did not accrue on the oral, due on demand, loan until demand was made to pay the loan by the Trustee on December 17, 2015.

On July 9, 2015, Charles Hanson filed a motion pursuant to Bankruptcy Rule 9023, to alter or amend the judgment of June 29, 2015. (Docket#48) In the motion to amend the judgment, Charles Hanson argued that under Illinois case law a cause of action on a due on demand loan obligation begins to accrue on the date of inception of the loan. The parties filed responsive and reply briefs on the issue and on July 22, 2015 the Bankruptcy court ruled on Charles Hanson's motion. (Docket#54 and Appendix Exhibit 8) The transcript of the July 22, 2015 ruling of the Bankruptcy court is attached to the Appellant's Appendix as Exhibit 7, and can be found in the record of case 15-CV-08171

6

at Docket Entry #6, Exhibit 16 pages 285-301. On July 22, 2015, the Bankruptcy court granted Charles Hanson's motion and found that the claim of the Trustee was time barred under the applicable Illinois statute of limitations and the Bankruptcy court entered judgment in favor of Charles Hanson. Counsel for the Trustee then requested additional time to file a brief addressing the application of the five year statute of limitations to the Trustee's other causes of action. The Bankruptcy court granted the Trustee's request and on August 12, 2015, the Trustee filed a document entitled "Trustee's Post-Trial Brief". (Docket#60) The parties then filed responses to the brief, a reply and a sur-reply was allowed to be filed by Charles Hanson.

In the Trustee's Post-Trial Brief, for the first time in the case, the Trustee asserted that the adverse domination rule should be applied to this case in order to extend the statute of limitations until such time as the Trustee became aware of the existence of the un-repaid oral loan agreement. Charles Hanson argued that the adverse domination rule was inapplicable to this case as there was no "wrongdoing" on the part of Charles Hanson, the existence of the loan agreement was never concealed, the lack of repayment of the loan had never been concealed, repayment of the loan had never been demanded by NWBM, and no court had ever applied the adverse domination rule to extend the statute of limitations for a claim against the corporation's President when the corporation's President was also its sole shareholder.

On September 9, 2015, the Bankruptcy Court ruled on the Trustee's Post-Trial Brief and found that the adverse domination rule applied to the Trustee's claim for breach of the oral loan agreement. (Docket#75 and Appendix Exhibit 10) The Bankruptcy Court then vacated its order of July 22, 2015 and reinstated the judgment of June 29, 2015. A

7

copy of the transcript of the September 9, 2015 ruling is attached to Appellant's Appendix as Exhibit 9. On September 16, 2015, Charles Hanson filed his notice of appeal, (Docket#77), which is attached as Appendix Exhibit 17, and on September 21, 2015, Charles Hanson filed his Statement of Issues to be Presented on Appeal, (Docket#84) a copy of which is attached as Appendix Exhibit 18.

## SUMMARY OF APPELLANT'S ARGUMENTS

The adverse domination rule is inapplicable to a corporation's claim against its President when the President is the corporation's sole shareholder, since of element of concealment of the alleged wrongdoing from the corporation and its shareholder can never be proven. In the case at bar, Charles Hanson did not commit an act of "wrongdoing" as defined by the cases discussing adverse domination when NWBM loaned him funds from the corporation's profits as the loan was both disclosed and approved by all officers and shareholders. Charles Hanson did not commit wrongdoing when he did not repay the loan, as the loan was due on demand and no demand was ever made by NWBM for Charles Hanson to repay the loan. Additionally, by the end of 2005 the ability to make demand for repayment of the loan would have lapsed based upon the expiration of the statute of limitations. Further, since concealment of the alleged wrongdoing is required to invoke the adverse domination rule, and since the existence of the loan, the amount of the loan, the terms of the loan, the fact that NWBM had no present intent to demand repayment of the loan and the fact that the loan was not repaid by Charles Hanson was never concealed from NWBM, but rather conspicuously disclosed in the annual Consolidated Financial Statements, the adverse domination rule is inapplicable to this case. The ruling by the Bankruptcy court that found that Charles

8

Hanson committed "wrongdoing" for the purposes of invoking the adverse domination rule by failing to repay the loan, and failing to remove the loan from NWBM's financial records after the statute of limitation passed amounts to error because the failure to repay the loan was never concealed from NWBM or its other officers and leaving the loan on NWBM's financial records did not harm NWBM. Additionally, there is no evidence that Charles Hanson had any knowledge regarding the applicable statute of limitations or that he purposefully intended not to repay the loan. Rather, repayment of the loan was never demanded and there is no evidence that, if the loan repayment was demanded by NWBM within the applicable statute of limitations, Charles Hanson would have been able to pay back the loan. Finally, a Plaintiff corporation seeking to utilize the adverse domination rule must prove the date when the Plaintiff knew or should have known of the wrongdoing and the date when the majority of directors of the Plaintiff corporation knew or should have known of the wrongdoing. In this case, the Trustee failed to introduce at trial any evidence as to the individuals who comprised the Board of Directors of NWBM, when NWBM became aware of the alleged wrongdoing, or when the Board of Directors of NWBM became aware of the alleged wrongdoing.

## ARGUMENT

## I

## ADVERSE DOMINATION RULE

The Adverse Domination rule, which is used to extend the statute of limitations in certain limited circumstances, is inapplicable to this case because Hanson did not commit any "wrong doing" against NWBM, did not breach any fiduciary duty owed to NWBM or is shareholder, and did not conceal any facts relating to the loan to Charles Hanson, or

9

lack of repayment of the loan, from individuals or entities to whom Charles Hanson owed a fiduciary duty.  The essence of the adverse domination rule is that, in certain circumstances, officers and directors of a corporation owe a fiduciary duty to the corporation and, hence, its shareholders. Then if the officer or director commits a breach of that fiduciary duty which harms the corporation, and that breach of fiduciary duty is concealed from the corporation, the adverse domination rule extends the statute of limitations to allow the corporation additional time to discover the wrongdoing and file suit against the officer or director who committed the breach of fiduciary duty. The rule was first accepted in Illinois in the case of <u>Lease Resolution Corp. v. Larney</u>, 308 Ill. App. 3d 80, 719 N.E.2d 165 (1999). Importantly, and logically, the rule has never been applied to a corporation's claim against its President, when the President is also the corporation's sole shareholder.

When adopting the adverse domination rule the court in <u>Lease Resolution Corp. v. Larney</u>, 308 Ill. App. 3d 80, 86-87, 719 N.E.2d 165, 170 (1999) noted as follows:

"Adverse domination is an equitable doctrine that tolls the statute of limitations for claims by a corporation against its officers and directors while the corporation is controlled by those wrongdoing officers or directors. *Resolution Trust Corp. v. Grant,* 901 P.2d 807 (Okla.1995); *Resolution Trust Corp. v. Chapman,* 895 F.Supp. 1072 (C.D.Ill.1995). The rationale behind this doctrine is "that control of the board by wrongdoers precludes the possibility for filing suit since these individuals cannot be expected to sue themselves or initiate action contrary to their own interests." *Federal Deposit Insurance Corp. v. Greenwood,* 739 F.Supp. 450, 453 (C.D.Ill.1989).
No Illinois court has ever addressed or recognized the adverse domination doctrine. Illinois has, however, recognized the discovery rule. Where the discovery rule applies, the relevant statute of limitations is tolled until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused. *Hermitage Corp. v. Contractors Adjustment Co.,* 166 Ill.2d 72, 209 Ill.Dec. 684, 651 N.E.2d 1132 (1995); *Jackson Jordan, Inc. v. Leydig, Voit & Mayer,* 158 Ill.2d 240, 198 Ill.Dec. 786, 633 N.E.2d 627 (1994).
When the plaintiff is a corporation, it can only learn that it has been injured through its agents. Generally, an agent's knowledge is imputed to the principal. However, if the agent's interests are adverse to those of the principal, the agent's knowledge is not

imputed to the principal. *Kinzer v. Fidelity & Deposit Co.,* 273 Ill.App.3d 211, 209 Ill.Dec. 706, 652 N.E.2d 20 (1995); *McKey & Poague, Inc. v. Stackler,* 63 Ill.App.3d 142, 20 Ill.Dec. 130, 379 N.E.2d 1198 (1978).

Logical application of the discovery rule and agency law principles leads to recognition of the adverse domination doctrine. As the court in *Chapman* noted:

"The adverse domination doctrine is simply a common sense application of the discovery rule to a corporate plaintiff. If a company's board of directors is the only body which can bring a lawsuit on behalf of the company, and the board of directors are the only members of the company with the knowledge the company has a cause of action, and the members of the board of directors are the potential defendants in that cause of action, it is simply unreasonable to expect those individuals to sue themselves. For purposes of the discovery rule, therefore, the company does not know of its cause of action until the wrongdoing board of directors no longer controls it." *Chapman,* 895 F.Supp. at 1078."

Additional elements of proof relating to the adverse domination rule were discussed by this District Court in the case of <u>In re Emerald Casino, Inc.</u>, 530 B.R. 44, 172-73 (N.D. Ill. 2014) <u>reconsideration denied,</u> 538 B.R. 417 (N.D. Ill. 2015), wherein Judge Pallmeyer noted the following:

"Illinois's doctrine of adverse domination is "an equitable doctrine that tolls the statute of limitations for claims by a corporation against its officers and directors while the corporation is controlled by those wrongdoing officers or directors." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 935 (7th Cir.2012) (quoting *Lease Resolution Corp. v. Larney,* 308 Ill.App.3d 80, 86, 241 Ill.Dec. 304, 719 N.E.2d 165, 170 (1st Dist.1999)). The doctrine "creates a rebuttable presumption that knowledge of the injury will not be available to the corporation as long as the corporation is controlled by wrongdoing officers and directors." *Larney,* 308 Ill.App.3d at 90, 241 Ill.Dec. 304, 719 N.E.2d at 173 (citing cases). The presumption is rebuttable, however, and can be overcome "by evidence that someone other than the wrongdoing directors had knowledge of the cause of action and both the ability and the motivation to bring suit." *Id.*

The adverse domination concept is an extension of the Illinois discovery rule, under which the statute of limitations is tolled until a plaintiff knows or should know that he has been injured and that his injury was wrongful. A plaintiff seeking to invoke tolling of the limitations period under this rule has the burden of proving the date of discovery. *Resolution Trust Corp. v. Franz,* 909 F.Supp. 1128, 1137 (N.D.Ill.1995) (quoting *Hermitage Corp. v. Contractors Adjustment Co.,* 166 Ill.2d 72, 85, 209 Ill.Dec. 684, 651 N.E.2d 1132, 1138 (1995)). Because a plaintiff-corporation can learn that it has been injured only through the knowledge of its agents, if the agents' interests are adverse to the corporation, the agents' knowledge is not imputed to the corporation. *See Stewart,* 665 F.3d at 935. "The rationale behind this doctrine is 'that control of the board by wrongdoers precludes the possibility for filing suit since these individuals cannot be expected to sue themselves or initiate action contrary to their own interests.' " *Larney,*

308 Ill.App.3d at 86, 241 Ill.Dec. 304, 719 N.E.2d at 170 (quoting *FDIC v. Greenwood,*
739 F.Supp. 450, 453 (C.D.Ill.1989))."

Therefore, in order to apply the adverse domination rule there must first be some
type of "wrongdoing" that causes injury to the corporation and hence its shareholders.
Secondly, the wrongdoing must have either been performed by a director or by a
corporate officer who controlled the corporation. Thirdly, the facts relating to the
wrongdoing must have been concealed from the Board of Directors or the other, non-
complicit, officers or directors of the corporation. Finally, a Plaintiff asserting the adverse
domination rule must display that no other individual, who was non-complicit in the
wrongdoing, had both knowledge of the wrongdoing and had the ability to bring suit for
damages caused by the wrongdoing.

## II

## ELEMENTS NECESSARY TO INVOKE THE ADVERSE DOMINATION RULE

To invoke the adverse domination rule there must be "wrongdoing" by an officer
or director that harms the corporation and that wrongdoing must have been concealed
from the corporation. The definition of "wrongdoing" was discussed in the case of <u>Lease
Resolution Corp. v. Larney</u>, 308 Ill. App. 3d 80, 88-89, 719 N.E.2d 165, 171-72 (1999)
as follows:

"There are three theories as to the level of culpability required before a director is
considered a wrongdoer. The "intentional wrongdoing" theory places the culpability
threshold at intentional conduct. *Federal Deposit Insurance Corp. v. Henderson,* 61 F.3d
421 (5th Cir.1995). The "at least negligence" theory places the culpability threshold at
negligent conduct. *Resolution Trust Corp. v. Fleischer,* 890 F.Supp. 972 (D.Kan.1995).
Finally, the "more than negligence" theory places the culpability threshold somewhere
between gross negligence and intentional conduct. *Franz,* 909 F.Supp. at 1137. We find
that the "more than negligence" theory most fully incorporates the principles of the
discovery rule.
We expressly adopt the adverse domination doctrine and hold that in order to avail itself
of the doctrine a plaintiff must establish that a majority of the directors were wrongdoers

during the period the plaintiff seeks to toll the statute, in that they exhibited at least recklessness or gross negligence."

The origin of the tolling of the statute of limitation in Illinois pre-dates its official adoption by the Larney court. In the case of Robert P. Butts & Co. v. Butts' Estate, 119 Ill. App. 2d 242, 249, 255 N.E.2d 622, 626 (Ill. App. Ct. 1970), the type of acts that amount to "wrongdoing" so as to toll the statute of limitation was described as follows:

"The issue of the 5 year statute of limitations is controlled by Auer v. William Meyer Co., 322 Ill.App. 244, 54 N.E.2d 394, which holds that where directors of a corporation violate a trust in a situation where the directors are in complete control of the affairs, and where no notice of the violation has reached a minority stockholder, the statute of limitations is not a bar to the assertion of the rights of such minority stockholder. Claimant was a family company charged with a public trust. Until the collapse of the claimant company or the death of the decedent, there was no one to assert the trust."

In the Butts' Estate case the wrongfully act of the corporate President, Robert Butts Jr., was the converting of funds that were to be held in a "Premium Trust Fund" by a company called Lincoln Casualty Company, which was owed by Robert Butts Company. The Premium Trust Funds were not assets of Lincoln Casualty Company and, by statute, could not be used as general funds. Therefore, the Robert Butts & Company was injured when Robert Butts Jr., converted the Premium Trust Funds for his personal use. Since Robert Butts Jr., owed a fiduciary duty to the Robert Butts & Company, the adverse domination rule was applied to extend the statute of limitations to allow the corporation to recover the wrongfully converted funds.

In the Larney case the wrongdoing by Larney was the conversion of $2,404,631.76 in funds. The funds represented a discount received by the Plaintiff corporation, which was the general partner of a publicly traded limited partnership. The discount was received in consideration of purchasing a portfolio of leases without recourse instead of with recourse. Larney then represented to the corporate auditors that

13

the funds actually represented a fee that was to be paid to a separate corporation controlled by Larney. In this manner Larney concealed the breach of fiduciary duty from the corporation.

What can be gleaned from a review of these two cases is that the type of wrongdoing must be in the nature of a reckless or grossly negligent breach of a fiduciary duty that the corporate officer or director owed the corporation, or in the case of <u>Larney</u>, the general partner and limited partners. Since the wrongdoing officers or directors breached their fiduciary duty and concealed that breach of fiduciary duty to the detriment of the unknowing corporation, its shareholders or limited partners, the corporation or general partner should be able to recovery from the wrongdoing officers and directors on behalf of the injured shareholders or limited partners. Further, due to the fact that the information regarding the breach of fiduciary was concealed, equity required that the statute of limitations begin to run from the date that the acts that were claimed to be breaches of fiduciary duty were discovered by the injured corporation, its shareholders, limited partner or other officers or directors of the company as the case may be.

## III

## ADVERSE DOMINATION RULE HAS NEVER BEEN APPLIED TO A SOLE SHAREHOLDER WHO IS THE PRESIDENT OF THE CORPORATION

Simple logic dictates that the adverse domination rule cannot be applied to extend the statute of limitations for a claim against a corporation's President when that President is also the sole shareholder of the corporation. This is true since the basis of the adverse domination rule is that the officer's wrongdoing was concealed from the corporation. Yet, if the officer committing the alleged wrongdoing is essentially the corporation, by way of owning all the shares of the corporation, it is impossible to have concealment of the

officer's wrongdoing from the corporation and its shareholders. Necessarily, in the case at bar, NWBM and all of its shareholders were aware of everything that Charles Hanson did or intended to do in the future.

In Charles Hanson's Response Brief to the Trustee's Post Trial Brief, Charles Hanson noted to the Bankruptcy court that the adverse domination rule has never been applied to a situation where the corporation's sole shareholder is also its President. In response to this assertion Judge Wedoff state's in his ruling of September 9, 2015, "Moreover, at least one other court has found that the doctrine of adverse domination can be employed in the context of a single-shareholder corporation. See FDIC v. Benson, 867 F. Supp. 512, SD Texas 1994." Yet, the Benson case does not discuss a corporation in which a sole shareholder/President is being sued and the adverse domination rule is being used to extend the statute of limitations. In Benson the FDIC sued twenty two separate officers and directors of the federally insured University National Bank of College Station, Texas. While it is true that the Bank at issue was solely owned by a parent corporation, University Bankcorp Inc., the parent corporation presumably had numerous shareholders and the parent corporation was not the controlling entity being sued for which the adverse domination rule was being utilized to extend the statute of limitations. Further, the Benson court did not actually apply the adverse domination rule to extend the statute of limitations. Rather the Benson court simply denied the Defendants' motion for summary judgment and held that an issue of fact existed as to whether the adverse domination rule could be applied to extend the statute of limitations. For the reasons previously discussed, no court has applied, nor can a court logically apply, the adverse

domination rule to a corporation's claim against its President when the President is also the corporation's sole shareholder.

<div align="center">

**IV**

**<u>HANSON DID NOT COMMIT ANY "WRONGDOING"</u>**

</div>

If we apply the definition of "wrongdoing" as discussed in the preceding cases, it is apparent that the acts of Charles Hanson do not constitute "wrongdoing" for the purposes of invoking the adverse domination rule. As explained by Peter Cieslak, the corporation's accountant, the NWBM was a subchapter S for profit corporation. That meant that Charles Hanson, as the sole stockholder of the corporation, personally paid taxes on all of NWBM's profits at his personal tax rate. (T-24-25) As the sole shareholder of the corporation Charles Hanson was absolutely entitled to enjoy the profits of his company either by way of a direct distribution of profits to himself, or by way of entering into a loan agreement with the corporation.  There was no tax advantage in distributing the profits as a loan as opposed to a simple distribution, as the applicable tax on the profits had already been paid by Charles Hanson as the sole shareholder of the Subchapter S corporation. Since Charles Hanson was the President and sole shareholder of NWBM, any act of distributing profits of the corporation to himself, either by loan or direct distribution, would necessary have been an act approved by President of the corporation and all of the shareholders. The primary purpose of a "for profit corporation" is to earn profits in a given year and then distribute those profits to the corporation's shareholders. In this particular case, NWBM distributed profits to its President and sole shareholder, by way of a loan that was due on demand. The existence of the loan, the terms of the loan and the amount of the loan was clearly noted in all of the annual

Consolidated Financial Statements of NWBM as prepared by Miller Cooper & Company. These Consolidated Financial Statements were then given to Charles Hanson, the other corporate officers and NWBM's secured lender, Suburban Bank. (T-40). Based upon these facts, it is impossible to argue that the existence of the loan was concealed from the corporation and its other officers or that the fact that the loan had not been repaid was concealed from the corporation or its other officers. Further, the reason the loan was not repaid was due to the fact that the corporation never demanded repayment and clearly disclosed the fact that it had no present intention of demanding repayment in each annual Consolidated Financial Statement.

<div align="center">

**V**

**<u>ANALYSIS OF THE BANKRUPTCY COURT'S RULING</u>**

</div>

In the Bankruptcy court's ruling of September 9, 2015, which held that the adverse domination rule applied to the facts of the case, the court stated as follows regarding Hanson's alleged wrongdoing:

"For the purposes of the doctrine of adverse domination, Hanson became a wrongdoer when he both failed to pay the debts he owed to the corporation and failed to indicate that the corporation no longer had a claim against him. Rather than taking either of these actions, he left the indebtedness on Mollie's (NWBM) balance sheets as outstanding loans and, therefore, corporate assets."

If we review the logic employed by the Bankruptcy court in light of the cases discussing the facts necessary for the application of the adverse domination rule, it is readily apparent that the Bankruptcy court misunderstood the adverse domination rule and its application. First, the Bankruptcy court equates failing to repay the loan as a

wrongful act as that term is utilized in the adverse domination rule. Yet, in this case the loan was due on demand and NWBM never made a demand upon Charles Hanson to repay the loan. Further, the fact that Charles Hanson did not repay the loan was never concealed from NWBM or its other officers. Hence, the lack of repayment of the loan amount can never be the type of wrongdoing that invokes the adverse domination rule, since the wrongdoing must be concealed in order to invoke the adverse domination rule.

Secondly, the Bankruptcy court states that another wrongdoing on Charles Hanson's part was his failure to indicate that NWBM could no longer make a claim on the due on demand loan after 2005 when the of the statute of limitations would necessarily have expired. This particular statement of alleged wrongdoing assumes that Charles Hanson was intimately knowledgeable of the Illinois statute of limitations pertaining to oral, due on demand, loans and that Charles Hanson, not the accounting firm of Miller Cooper & Company, made the determination as to how assets and liabilities were reflected in the Consolidated Financial Statements that Miller Cooper & Company authored for NWBM. There is absolutely no evidence in the record of this case that supports the trial court's assumption that Charles Hanson was aware that oral, due on demand, loans are governed by a five year statute of limitations that begins to run upon the inception of the loan. This assumption by the Bankruptcy court, as to Charles Hanson's knowledge of the applicable statute of limitations is odd since Judge Wedoff himself, in his June 29, 2015 decision, initially determined that the applicable statute of limitations began to run only when demand was first made for payment on the due on demand loan. Judge Wedoff later reversed his June 29, 2015 determination only after counsel for Charles Hanson filed a motion to alter or amend the order of June 29, 2015

which contained a lengthy discussion of the case law regarding due on demand obligations.

The second assumption of the Bankruptcy court that has no basis in the record is that Charles Hanson, with knowledge that the statute of limitation had run on the oral, due on demand, loan, then intentionally made the determination to continue to book the loan as existing. No one testified at trial that Charles Hanson, individually, had anything to do with the preparation of the Consolidated Financial Statements or any financial statements for that matter on the part of NWBM. Kathy Henry was the officer of NWBM that was responsible for all the finances during the relevant time period of the 2000's, and she was the controlling officer of NWBM as of 2008 when Charles Hanson no longer was able to work for NWBM. Peter Cieslak's testimony at trial was that he and other employees of Miller Cooper & Company were responsible for the preparation of the Consolidated Financial Statements and that he received the financial information regarding NWBM from Kathy Henry and the corporation comptroller (T-22).

Finally, the most glaring problem with the Bankruptcy court's attempt to equate a failure to delete the loan due from shareholder from the Consolidated Financial Statements after the expiration of the statute of limitations in 2005, is that act did not cause harm to NWBM. In order for there to be wrongdoing that invokes the adverse domination rule, that wrongdoing must harm the corporation. Leaving the loan on the financial records of NWBM after the ability to sue to collect the loan had lapsed did not harm NWBM. As specifically stated in the ruling of September 9, 2015, the only affect of leaving the loan on the financial statements as an asset of NWBM would be an increase

in the assets of NWBM on its balance sheet. Having a balance sheet with increased assets is not a harm inflicted upon the corporation by Charles Hanson.

From a further reading of ruling of September 9, 2015, it is clear that the Bankruptcy court did not grasp the fact that the wrongdoing at issue must have caused harm to NWBM, and not potential harm to third party creditors of NWBM. Specifically, the Bankruptcy court states, "Mollies creditors then presumably were able to rely on these balance sheets without knowing that Hanson never intended to pay Mollie (NWBM) what he owed on the loans." Yet, third party creditor reliance, whether it can be presumed or not, is not an issue relevant to the adverse domination rule. The wrongdoing at issue must harm the corporation and be concealed from the corporation and its other officers in order to invoke the adverse domination rule.

The second problem with this finding is that Charles Hanson never testified at trial at all and definitely did not testify regarding any lack of intent with regard to repaying the oral loan. No other witness testified as to Charles Hanson's lack of intent to repay the loan and it is just al likely that Charles Hanson was financially unable to repay the loan if NWBM had made demand for repayment. Yet repayment of the loan was never demanded by NWMB, so the issue of repayment was never raised. Next, all of the Consolidated Financial Statements from 2002 through 2008 expressly state as to the loan that, "The Companies are not expected to demand repayment within the next year; therefore, the balance has been classified as long-term in the accompanying consolidated balance sheet." Therefore, any individual who reviewed the Consolidated Financial Statements would know that NWBM had no intention to demand repayment of the loan. Finally, no one testified that anyone relied upon the Consolidated Financial Statements to

their detriment or that Charles Hanson, individually, received any benefit from the fact that the individuals in charge of preparing NWBM's financials continued to record the loan transaction beyond the date when the statute of limitations for collection of the loan had expired. Therefore, not only was this finding by the Bankruptcy court not supported by any evidence and is contradicted by the wording of the Consolidated Financial Statement, but the finding is simply speculation without any basis in the record.

Importantly, "wrongdoing" as that term is used relating to the adverse domination rule, must be based upon a breach of a fiduciary duty owed to the corporation and the concealment of the wrongdoing from the corporation. Therefore it is important to understand to whom Charles Hanson owed a fiduciary duty. When dealing with corporations that are owned by multiple shareholders, as explained in In re Holler, 187 B.R. 622, 639 (Bankr. C.D. Ill. 1994), "Under Illinois law, corporate directors have fiduciary duties of good faith, loyalty, and honesty to the corporation and to the shareholders of that corporation." Yet, in the case at bar it is impossible for there to be a breach of fiduciary duty on the part of Charles Hanson with regard to the shareholders and the corporation. This fact was explained in the case of In re: Doctors Hosp. of Hyde Park, Inc., 474 F.3d 421, 428 (7th Cir. 2007) in which the court held, "Because Desnick was the sole shareholder of the Hospital, he can hardly have defrauded himself or breached a fiduciary duty to himself. See cf. In re Tufts Elecs., Inc., 746 F.2d 915, 917 (1st Cir.1984) (holding that corporate opportunity doctrine does not apply against a sole shareholder who cannot defraud or conceal information from himself). Importantly, Charles Hanson did not owe a fiduciary duty to any creditors when NWBM made the loan to Charles Hanson, when Charles Hanson did not repay the loan or at anytime during

his tenure at NWBM. This fact was explained in In re Fairgrieves, 426 B.R. 748, 755-56

(Bankr. N.D. Ill. 2010) as follows:

"Illinois law is clear that "so long as a corporation remains solvent, its directors ... owe no duties or obligations" to anyone other than the corporation and its shareholders, and owe no duties to protect creditors. In re Hussain, 308 B.R. at 867 (quoting Technic Eng'g, Ltd. v. Basic Envirotech, Inc., 53 F.Supp.2d 1007, 1010 (N.D.Ill.1999)). The Plaintiff has offered no other reason why the Debtor would have owed a fiduciary duty to the Plaintiff, and since it failed to allege or support an allegation that 10th Inning was insolvent, its argument under Section 523(a)(4) must fail."

As evidenced by the Consolidated Financial Statements from 2002 through 2008 NWBM was a solvent and active corporation that was paying its debts as they became due. No one testified that at any time during Charles Hanson's tenure with NWBM that the corporation was insolvent. Clearly, NWBM was very solvent when the loan was made from the corporation's profits to Charles Hanson, which event occurred prior to the end of 2001, and through the date when the oral loans were no longer collectible at the end of 2005. In fact, from a review of the Consolidated Financial Statements for 2003 and 2004, the corporation's net income more than doubled from 2003 to 2004. By the end of 2005, the ability to demand payment under the loan would surely have lapsed, yet the corporation was still in business and paying its debts when due. Under Illinois Business Corporation Act, distributions of a corporation's capital is wrongful only if the distribution violates 805 ILCS 5/9.10, and officers can only be liable for wrongful distributions pursuant to 805 ILCS 5/8.65 if they violate 5/9.10. Yet there is no evidence that any distribution to Charles Hanson violated 805 ILCS 5/9.10. Therefore, Hanson did not commit "wrongdoing" as that term is used when invoking the adverse domination rule.

VI

## NO CONCEALMENT FROM OTHER OFFICERS, SHAREHOLDERS OR DIRECTORS

In this case the Trustee did not provide to the Bankruptcy court any evidence as to the actual date of the inception of the verbal loan, which individuals comprised the Board of Directors of NWBM and whether those individuals were aware of the loan made by NWBM to Charles Hanson. According to the testimony of Peter Cieslak, the Consolidated Financial Statements were given to the officers of NWBM each year. The Consolidated Financials disclose the current loan amount to Charles Hanson and the fact that NWBM did not intend to demand repayment of the loan during the next fiscal year. The Consolidated Financial Statements also disclose in excess of a million dollars owed by NWBM to the other corporate officers. As noted in the case of <u>Resolution Trust Corp. v. Chapman</u>, 895 F. Supp. 1072, 1079 (C.D. Ill. 1995):

"Furthermore, the Court finds the RTC must establish each "wrongdoer" was guilty of more than mere negligence. Under this version of the adverse domination doctrine "the statute will be tolled if there was no informed but not culpable person who was in a position to commence or cause the commencement of a lawsuit, and would continue to be tolled until such time as there was such a person (acting alone or with others), at which time the statute would begin to run."

Clearly the other officers of NWBM were aware of the loan to Charles Hanson and were aware that NWBM did not intend to demand payment of the loan and had not demanded repayment of the loan since the inception of the loan, which could have occurred in the early 1990s. The other three corporate officers, who were owed a significant amount from NWMB, had the ability and the motivation to make a demand for repayment of the loan to Charles Hansen if those officers believed that making such a

demand was in the best interest of NWBM. Therefore, since the loan was not concealed, the fact that the loan was not be repaid was not conceal, the fact that NWBM had no present intention of demanding repayment of the loan was not conceal, and non-culpable corporate officers were aware of the loan and lack of repayment, it is impossible to prove the type of concealment necessary to support a claim for adverse domination.

Since the Trustee did not present any evidence as to the individuals who constituted the Board of Directors of NWBM, it is impossible to prove that the Board of Directors was either controlled by Hanson or was not aware of the loan and the lack of repayment. At this juncture it is important to note that the Trustee not only did not provide any evidence as to who comprised the Board of Directors or what knowledge or lack of knowledge the Board possessed, but the Trustee failed to provide any evidence as to when the Trustee or anyone else within the corporation become aware of the alleged wrongful acts. As explained in Resolution Trust Corp. v. Franz, 909 F. Supp. 1128, 1137 (N.D. Ill. 1995):

"To resolve this issue, we step back and consider what the plaintiff has to prove if a defendant raises a statute of limitations defense. "When a plaintiff uses the discovery rule to delay commencement of the statute of limitations, the plaintiff has the burden of proving the date of discovery." *Hermitage,* 166 Ill.2d at 85, 209 Ill.Dec. 684, 651 N.E.2d 1132. In the corporate context, that means that the plaintiff must prove the date on which the company knew or should have known of its cause of action. In turn, that means that the plaintiff must prove the date on which the majority of the directors knew or should have known of the cause of action."

In the case at bar, not only did the Trustee make no attempt to prove which individuals were on the Board of Directors of NWBM, but the Trustee made no attempt to prove when or if the Board was aware of Hanson's alleged wrongful conduct or if and when any other officer of NWBM was aware of the alleged wrongdoing by Hanson. As such, the Trustee did not even attempt to carry her burden of proof at trial, and this is most

likely due to the fact that the adverse domination rule was an afterthought and only raised after the Bankruptcy court ruled that the Trustee's claim was time barred.

## CONCLUSION

In conclusion, the adverse domination rule is inapplicable to a corporation's claim against its President when the President is the corporation's sole shareholder, since of element of concealment of the alleged wrongdoing from the corporation and its shareholder can never be proven. In the case at bar, Charles Hanson did not commit an act of "wrongdoing" as defined by the cases discussing adverse domination when NWBM loaned him funds from the corporation's profits. Charles Hanson did not commit wrongdoing when he did not repay the loan, as the loan was due on demand and no demand was ever made by NWBM for Charles Hanson to repay the loan and by the end of 2005 the ability to make demand for repayment of the loan would have lapsed based upon the expiration of the statute of limitations. Further, since concealment of the alleged wrongdoing is required to invoke the adverse domination rule, and since the existence of the loan, the amount of the loan, the terms of the loan, the fact that NWBM had no present intent to demand repayment of the loan and the fact that the loan was not repaid by Charles Hanson was never concealed from NWBM, but rather conspicuously disclosed in the annual Consolidated Financial Statements, the adverse domination rule is inapplicable to this case. The ruling by the Bankruptcy court that found that Charles Hanson committed "wrongdoing" for the purposes of invoking the adverse domination rule by failing to repay the loan, and failing to remove the loan from NWBM's financial records after the statute of limitation passed amounts to error because the failure to repay the loan was never concealed from NWBM or its other officers and leaving the loan on

NWBM's financial records did not harm NWBM. Finally, there is no evidence that Charles Hanson had any knowledge regarding the applicable statute of limitations or that he purposefully intended not to repay the loan. Rather, repayment of the loan was never demanded and there is no evidence that, if the loan repayment was demanded by NWBM within the applicable statute of limitations, Charles Hanson would have been able to pay back the loan. Finally, a Plaintiff corporation seeking to utilize the adverse domination rule must prove the date when the Plaintiff knew or should have known of the wrongdoing and the date when the majority of directors of the Plaintiff corporation knew or should have known of the wrongdoing. In this case, the Trustee failed to introduce at trial any evidence as to the individuals who comprised the Board of Directors of NWBM, when NWBM became aware of the alleged wrongdoing, or when the Board of Directors of NWBM became aware of the alleged wrongdoing.

WHEREFORE for the foregoing reasons the Appellant, Charles Hanson, respectfully requests that this District Court enter an order reversing the Bankruptcy Court's order of September 9, 2015 that vacated the order of July 22, 2015 which found in favor of the Adversary Defendant, Charles Hanson, and against the Adversary Plaintiff, Trustee Brenda Helms, and hold that all claims contained in the Adversary Complaint against Defendant Charles Hanson have been fully adjudicated and are denied, and for any other and further relief that this District Court deems appropriate to effectuate a complete dismissal of all claims brought against the Adversary Defendant/ Appellant herein.

Respectfully Submitted

Charles Hanson

By: /s/ *Peter G. Swan*

EMALFARB, SWAN & BAIN
His Attorneys


Peter G. Swan
EMALFARB, SWAN & BAIN
440 Central Avenue
Highland Park, Illinois 60035
(847) 432-6900
Attorney # 6186883


## CERTIFICATE OF COMPLIANCE WITH RULE 8015(A)(7)(b)

This Appellant's brief complies with the type-volume limitation of Rule 8015(a)(&)(B)

because this brief contains 8,508 words, excluding the parts of the brief exempted by

Rule 8015(a)(&)(B)(iii).


/s/ *Peter G. Swan*                     November 17, 2015

Peter G. Swan

TO:    David L. Kane
        Meltzer, Purtill & Stelle LLC
        300 South Wacker Drive, Suite 3500
        Chicago, Illinois 60606
        (312) 987-9900
        Fax: (312) 987-9854

## **CERTIFICATE OF SERVICE**

I, Peter Swan, certify I served this notice by mailing copies to the above attorneys of record at the addresses above and depositing the same in the U.S. Mail at the Central Ave. Post Office, by 5:45 P.M. on November 17, 2015.

                        __ /s/ Peter G. Swan