# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: MOLLIE ENTERPRISES, INC., | ) |
| | ) Case No. 15-cv-8171 |
| Debtor. | ) |
| _____ | ) Judge Robert M. Dow, Jr. |
| | ) |
| BRENDA HELMS, not individually or personally but solely in her capacity as the Chapter 7 Trustee of Debtor's Estate, | ) |
| | ) On appeal from the U.S. Bankruptcy Court for the Northern District of Illinois, |
| Plaintiff-Appellee, | ) Eastern Division |
| | ) |
| v. | ) Bankr. Case Nos. 12-B-20426, 15-A-00034 |
| | ) |
| CHARLES HANSON, | ) Judge Eugene R. Wedoff |
| | ) |
| Defendant-Appellant. | |

**MEMORANDUM OPINION AND ORDER**

This case is on appeal from the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, Case Nos. 12-B-20426, 15-A-00034. On September 9, 2015, the Bankruptcy Court vacated its July 22, 2015 order and reinstated its original June 29, 2015 ruling in favor of Plaintiff-Appellee Brenda Helms ("the Trustee"). The Bankruptcy Court held that Defendant-Appellant Charles Hanson breached an oral loan agreement between Hanson and Mollie Enterprises, Inc. ("the Debtor") by not repaying the loans and that the Trustee's claim to collect against Hanson was timely because of the adverse domination doctrine. Before the Court is Hanson's appeal of the Bankruptcy Court's decision to reinstate its original ruling. For the reasons set forth below, the Bankruptcy Court's decision is affirmed.

**I.      Background**

Hanson was the President and sole shareholder of the Debtor, Mollie Enterprises, Inc., formerly known as Northwest Building Material & Supply Co. The other corporate officers

were Hanson's three children: Katherine Henry, Scott Hanson, and Charles Hanson, Jr. Hanson ran the day-to-day affairs of the Debtor. Hanson contends that Katherine Henry was involved in financial analysis for the Debtor from the early 1990's until it ceased operations in 2010 and that she took over as the "controlling officer" of the Debtor in 2008.

At some point prior to 2002, the Debtor entered into an oral contract with Hanson for a series of loans from the Debtor. [See 7, at 2.] As of 2010, Hanson owed the Debtor approximately three million dollars. [See 16, at 6; 9, at Exhibit 16, 1–2.] Repayment of these loans was to be made on demand from the Debtor. [7, at 2.] From at least 2002 to 2010, the Debtor's internal books and records reflected the Debtor's loans to Hanson, which accrued interest and charges on an annual basis. At the end of each fiscal year, the Debtor's accountants, Miller Cooper & Co., Ltd., prepared a "Consolidated Financial Statements and Independent Accountants' Report" reflecting the loans, which was distributed to Hanson, the other corporate officers, and the Debtor's secured lender, Suburban Bank. The Consolidated Financial Statements reflect an amount "due from stockholder [*i.e.*, Hanson]" and state with respect to the loans:

> Effective January 1, 2002, the advances bear interest at the prime rate * * * minus 0.5%. The note was non-interest bearing prior to 2002. Principal and interest are due on demand. The Companies are not expected to demand repayment within the next year; therefore, the balance has been classified as long-term on the accompanying balance sheet.

[10, Exhibits 11–16.]

The Debtor began having financial difficulties between 2008 and 2009 and failed to pay amounts it owed to numerous creditors from at least mid-2009 through the commencement of the Bankruptcy Case in mid-2012. By the end of 2010, the Debtor ceased doing business, and its assets were sold to pay the secured debt due to Suburban Bank. On May 18, 2012, two of the

Debtor's creditors filed an involuntary bankruptcy petition.[1] Plaintiff-Appellee Brenda Helms was appointed as the Debtor's Trustee on July 12, 2012.

The Debtor did not demand repayment of the loans from Hanson while Hanson controlled the Debtor. However, the Trustee made written demand on Hanson to repay the loans and all interest thereon on December 17, 2014. [10, at 4; 16, at 7.] Hanson failed to repay the loans. On January 16, 2015, the Trustee filed the underlying adversary complaint against Hanson seeking to recover the principal and interest of the loans, and the case proceeded to trial on June 29, 2015.[2] Hanson argued that the Illinois five-year statute of limitations started to accrue when the loan agreement originated prior to the beginning of 2002, and thus any claim to collect was time-barred. The Trustee argued that the cause of action did not accrue until a demand for payment was made; since the only demand for payment was made on December 17, 2014, the Trustee asserted that the claim against Hanson for breach of the loan agreement was not time-barred. [See 5.]

On June 29, 2015, the Bankruptcy Court ruled in favor of the Trustee, finding that there was an oral loan agreement between Hanson and the Debtor and that Hanson was in breach of the loan agreement since he did not repay the loans upon demand. [5, at 96–99.] The Bankruptcy Court concluded that the statute of limitations did not start to run until the date of demand, December 17, 2014, so the claim was not time-barred. [5, at 98.]

On July 9, 2015, Hanson filed a motion to alter or amend judgment pursuant to Bankruptcy Rule 9023. Hanson argued that under Illinois case law, the statute of limitations began to run on the date of inception of the loan, *i.e.*, prior to 2002. On July 22, 2015, the Bankruptcy Court granted Hanson's motion and entered judgment in Hanson's favor. [6, Exhibit

---

[1] Case No. 12-B-20426.
[2] Case No. 15-A-00034.

3

16, at 2.] The Bankruptcy Court held that a better interpretation of the limitations provision required that the statute of limitations start to run when a creditor may legally demand payment, which, for an on demand loan, is at the inception of the loan. [6, Exhibit 16, at 3–5.] The alternative approach of having the limitations period run only from the date of the demand, the Bankruptcy Court explained, would give an unlimited time for actions on oral demand agreements, since demand could be withheld indefinitely without violating the limitations period. [7, at 3–4.] The Bankruptcy Court also granted the Trustee's request for post-trial briefing. [6, Exhibit 16, at 15.]

On September 9, 2015, the Bankruptcy Court ruled on the post-trial briefing, vacated its July 22, 2015 order in favor in Hanson, and reinstated its June 29, 2015 judgment in favor of the Trustee. [7, at 7.] The Bankruptcy Court determined that the adverse domination rule applied to the Trustee's claim for breach of the oral loan agreement and thus tolled the statute of limitations until the Trustee replaced Hanson as the person controlling the Debtor. [7, at 7.] On September 16, 2015, Hanson filed a timely notice of appeal.

## II. Standard of Review

In a bankruptcy appeal, the Court reviews the Bankruptcy Court's findings of fact for clear error and its conclusions of law de novo. *In re Bulk Petroleum Corp.*, 796 F.3d 667, 672 (7th Cir. 2015), cert. denied, 136 S. Ct. 1162 (2016). A finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Kovacs v. United States*, 614 F.3d 666, 672 (7th Cir. 2010) (citation and internal quotation marks omitted).

## III. Analysis

The issue before the Court on appeal is whether the Bankruptcy Court properly held that the Trustee's claim to collect against Hanson was timely. The parties agree that under Illinois

4

law, a five-year statute of limitations governs a cause of action on an oral demand contract. 735 ILCS 5/13-205 ("[A]ctions on unwritten contracts * * * shall be commenced within 5 years next after the cause of action accrued."). However, the parties dispute whether the statute of limitations should have been tolled by the adverse domination rule.

The adverse domination doctrine is "an equitable doctrine that tolls the statute of limitations for claims by a corporation against its officers and directors while the corporation is controlled by those wrongdoing officers or directors." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Lease Resolution Corp. v. Larney*, 719 N.E.2d 165, 170 (Ill. App. Ct. 1999)) (internal quotation marks omitted) (applying Illinois law). In the context of adverse domination, "wrongdoing" has been defined as reckless or grossly negligent action; intentional wrongdoing is not required under Illinois law. *Lease Resolution Corp.*, 719 N.E.2d at 171–72. The adverse domination doctrine "creates a rebuttable presumption that knowledge of the injury will not be available to the corporation as long as the corporation is controlled by wrongdoing officers and directors." *In re Emerald Casino, Inc.*, 530 B.R. 44, 172 (N.D. Ill. 2014), reconsideration denied, 538 B.R. 417 (N.D. Ill. 2015) (applying Illinois law). However, the presumption can be overcome "by evidence that someone other than the wrongdoing directors had knowledge of the cause of action and both the ability and the motivation to bring suit." *Id.* at 172–73.

The adverse domination rule is an extension of the Illinois discovery rule, which tolls the statute of limitations until a plaintiff knows or should have known that he has been injured and that his injury was wrongful. *Indep. Trust Corp.*, 665 F.3d at 934. When the plaintiff is a corporation, it can only learn that it has been injured through its agents. *Id.* However, under Illinois agency law, if the agent's interests are adverse to the corporation's, the agent's

5

knowledge is not imputed to the corporation. See *id; Resolution Trust Corp. v. Chapman*, 895 F. Supp. 1072, 1077 (C.D. Ill. 1995) (applying Illinois law). "The rationale behind this doctrine is that control of the board by wrongdoers precludes the possibility for filing suit since these individuals cannot be expected to sue themselves or initiate action contrary to their own interests." *Lease Resolution Corp.*, 719 N.E.2d at 170 (citation and internal quotation marks omitted).

> The Bankruptcy Court applied the adverse domination rule, holding that
>
> Hanson became a wrongdoer when he both failed to pay the debts he owed to the corporation and failed to indicate that the corporation no longer had a claim against him. Rather than taking either of these actions, he left the indebtedness on Mollie's balance sheets as outstanding loans and, therefore corporate assets. * * * Mollie's creditors then presumably were able to rely on these balance sheets without knowing that Hanson never intended to pay Mollie what he owed on the loans. If he were allowed to assert the statute of limitations now, he would have gained the benefit of showing a corporate asset base substantially increased by the loan balance, without the personal liability that these loans needed in order to possess the status of genuine assets. Preventing such an outcome would certainly be within the rationale for the adverse domination doctrine.

[7, at 6–7.] The Court agrees with the Bankruptcy Court that the adverse domination rule applies here. It was wrong for Hanson, as controller of the Debtor, to make a series of loans to himself and then to fail to have the Debtor ever demand repayment of the loans. Hanson did not act in the best interest of the Debtor by not demanding repayment of the loans when the Debtor started having financial difficulties between 2008 and 2009 and could not repay its creditors. This was more than recklessness or gross negligence; Hanson intentionally avoided demanding repayment of the loans. Hanson even acknowledges that it was "clearly disclosed" in each annual Consolidated Financial Statement that the Debtor, which he controlled, "had no present intention of demanding repayment" of the loans. [10, at 17.] Since Hanson was both the wrongdoer and in control of the corporation, he could not have been expected to act contrary to his own personal interests and bring a claim for repayment against himself on behalf of the Debtor. Cf. *Lease*

6

*Resolution Corp.*, 719 N.E.2d 165 at 170 ("If a company's board of directors is the only body which can bring a lawsuit on behalf of the company, and the board of directors are the only members of the company with the knowledge the company has a cause of action, and the members of the board of directors are the potential defendants in that cause of action, it is simply unreasonable to expect those individuals to sue themselves."). Thus, the adverse domination rule applies and tolls the statute of limitations until the Trustee was appointed in 2012 and Hanson was no longer in control of the Debtor.

Hanson argues that he did not commit any wrongdoing in borrowing money from the Debtor and not repaying the loans because the Debtor did not demand repayment. This argument fails because the Debtor did not demand repayment due to the fact that Hanson controlled the Debtor and stood on both sides of the transaction. Consider what the situation would have looked like if the series of loans had been a true arms-length transaction between the Debtor and a third-party borrower (*i.e.*, not Hanson). In that scenario, if Hanson, as President and controller of the Debtor, had acted in the best interest of the cash-strapped Debtor, he would have made demand and brought suit upon the third-party borrower for repayment. However, since Hanson stood on both sides of the loan transaction, it is "simply unreasonable" to expect Hanson to have made demand and sued himself, which is why the adverse domination doctrine applies. *Lease Resolution Corp.*, 719 N.E.2d 165 at 170.

Next, Hanson contends that the adverse domination rule cannot be applied to extend the statute of limitations for a claim against a corporation's President when the President is also the sole shareholder of the corporation because there can be no "concealment from the corporation" in this situation. He asserts that there was no concealment here because "the existence of the due on demand loan[s], the failure to pay back the due on demand loan[s] and the decision of the

Corporation not to demand repayment was known at all times by the Plaintiff Corporation, its officers and shareholders, as disclosed by the annual Consolidated Financial Statements prepared by Miller Cooper." [18, at 1–2.] However, Hanson's knowledge of the Debtor's ability to demand and bring suit for repayment cannot be imputed to the Debtor because Hanson's interests were adverse to the Debtor's interest. *Indep. Trust Corp.*, 665 F.3d at 934 ("Because a plaintiff-corporation can learn that it has been injured only through the knowledge of its agents, if the agents' interests are adverse to the corporation, the agents' knowledge is not imputed to the corporation."). Here, it was in the Debtor's interest to demand repayment, whereas Hanson's personal interests were served by avoiding repayment. Thus, Hanson's knowledge cannot be imputed to the Debtor, and the Debtor did not know that it could bring this cause of action until the Trustee was appointed in 2012. See *In re Circle Y of Yoakum, Texas*, 354 B.R. 349, 359 (Bankr. D. Del. 2006) (holding that where the wrongdoer was the sole director of the Debtor and President of the sole shareholder of the Debtor, statute of limitations was tolled until the Trustee's appointment, since before that time there was no party with standing to file a derivative or other lawsuit for the wrongdoer's breach of fiduciary duty); *In re Raelyn Sales, Inc.*, 2002 WL 226364, at *7 (N.D. Tex. Feb. 12, 2002) (holding that the Bankruptcy Court correctly found that the statute of limitations was equitably tolled until the Trustee took over because appellant, who used the Debtor's funds for his own self-interest, was the Debtor's president and sole shareholder and thus would not have brought suit against his own interest within the limitations period); cf. *Lease Resolution Corp.*, 719 N.E.2d 165 at 171 (explaining that the adverse domination rule is analogous to trust principles, which dictate that "if a director puts his personal goals above those of the company the company suffers as a result, the statute of limitations will not bar the

company from recovering against the director as long as the company had no knowledge of the director's nefarious actions").

Finally, Hanson briefly argues that as of 2008, his daughter, Katherine Henry, "basically was running the company" and was in a position to demand repayment of the loan, and thus the statute of limitations started to run in 2008. Hanson does not develop this argument, noting that at trial, "no inquiry was ever made regarding [Katherine Henry's] ability or motivation to demand repayment of the loan[s] on behalf of the Corporation."[3] The Court does not find this argument persuasive. At trial, the Bankruptcy Court stated that "[t]here is no entity separate from [Hanson] who is making decisions." Although Katherine Henry may have played a larger role in running the Debtor starting in 2008, this does not show that she had "the ability and the motivation to bring suit," especially since that lawsuit would have been against her father. *Lease Resolution Corp.*, 719 N.E.2d at 173.

Thus, even if the statute of limitations would generally begin to run at the inception of the loan agreement (which, in this case, was prior to 2002), the statute of limitations was tolled until the Trustee was appointed on July 12, 2012 and Hanson was no longer in control of the Debtor. The Trustee brought this action on January 16, 2015 and thus acted within the five-year statute of limitations.

---

[3] The adverse domination doctrine was not raised at trial.

## IV. Conclusion

For the foregoing reasons, the Trustee's claim to collect against Hanson was timely pursuant to the adverse domination doctrine, and the Bankruptcy Court's September 9, 2015 decision vacating its July 22, 2015 order and reinstating its original June 29, 2015 judgment in favor of Plaintiff-Appellee Brenda Helms, as Trustee of the Debtor's Estate, is affirmed.

Dated: September 28, 2016

Robert M. Dow, Jr.
United States District Judge